# PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. BACKUS.

## ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 899. Argued March 27, 28, 1894. — Decided May 26, 1894.

The act of the legislature of Indiana of March 6, 1891, concerning taxation, is not obnoxious to the constitutional objections made to it, since the Supreme Court of that State has decided:

(1) That the constitution of that State authorizes such a method of assessing railroad property, which decision is binding on this court; and

(2) That the act gives the railroad companies the right to be heard before final determination of the question, which construction is conclusive on this court; and, further, since

(3) A tax law which grants to the taxpayer a right to be heard on the assessment of his property before final judgment provides a due process of law for determining the valuation, although it makes no provision for a rehearing.

When a railroad runs into or through two or more States, its value, for taxation purposes, in each is fairly estimated by taking that part of the value of the entire road which is measured by the proportion of the length of the particular part in that State to that of the whole road.

The judgment of a state board empowered to fix a valuation for taxation, cannot be set aside by the testimony of witnesses that the valuation was other than that fixed by the board, where there is no evidence of fraud or of gross error in the system on which the valuations were made.

On March 6, 1891, the legislature of the State of Indiana passed an act entitled "An act concerning taxation, repealing all laws in conflict therewith, and declaring an emergency," Laws 1891, c. 99, pp. 199 to 291, which, expressly repealing "all laws and parts of laws within the purview of this act," provided in itself a complete and comprehensive system of taxation. By it all property of individuals and ordinary corporations was subject to valuation and assessment by county officers, while the assessment of railroad property was committed to a state board of tax commissioners, composed of the governor, secretary of State, auditor of State, and two appointees of the governor. To this board, in addition to

the assessment of railroad property, was given the duty of equalizing the assessment of real estate throughout the State, as well as of entertaining appeals from the decisions of the several county boards. This method of assessing railroad property by a state board, as distinguished from the assessment of ordinary property through county officers, was not by this act for the first time introduced into the legislation of Indiana, though by it some changes were made in the organization of the state board, and in the details of procedure.

By section 129 the board was required to " convene in the office of the auditor of State, on the first Monday of August each year, for the purpose of assessing railroad property and equalizing the assessment of real estate, as provided in this act," and "is hereby given all the powers given to county boards of review." By section 132 authority was given to adjourn from time to time, with a proviso that " the duration of their sessions shall not exceed forty days." Section 3 is in these words :

" SEC. 3. All property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation."

In section 4 it is provided : " Shares in corporations, all the property of which is taxable to the corporation itself, shall not be assessed to the shareholder."

By section 8 personal property was to be listed for taxation as of the first day of April in each year.

The property of railroad corporations was divided into two classes — railroad track and rolling stock — and by sections 78 and 80 defined as follows :

" SEC. 78. Such right of way, including the superstructures, main, side or second track and turnouts, turn-table, telegraph poles, wires, instruments and other appliances, and the stations and improvements of the railroad company on such right of way, (excepting machinery, stationary engines, and other fixtures, which shall be considered personal property,) shall be held to be real estate for the purpose of taxation, and denominated ' railroad track.'

" SEC. 80. The movable property belonging to a railroad

company shall be held to be personal property, and denominated, for the purpose of taxation, 'rolling stock.'"

Between the first of April and the first of June of each year the railroad companies were required to make certain reports to the county auditors.  Section 85 is as follows:

"SEC. 85.  At the same time that the lists or schedules as hereinbefore required to be returned to the county auditor the person, company, or corporation running, operating, or constructing any railroad in this State shall, under the oath of such person, or the secretary or superintendent of such company or corporation, return to the auditor of State sworn statements or schedules, as follows:

"*First.* Of the property denominated 'railroad track,' giving the length of the main and side or. second tracks and turn-outs, and showing the proportions in each county and township, and the total in the State.

"*Second.* The rolling stock, whether owned or hired, giving the length of the main track in each county, and the entire length of the road in this State.

"*Third.* Showing the number of ties in track per mile, the weight of iron or steel per yard used in the main and side tracks, what joints or chairs are used in track, the ballasting of road, whether gravelled, stone, or dirt, the number and quality of buildings or other structures on 'railroad tracks,' the length of time iron or steel in track has been used, and the length of time the road has been built.

"*Fourth.* A statement or schedule showing:

"1st. The amount of capital stock authorized and the number of shares into which such capital stock is divided.

"2d. The amount of capital stock paid up.

"3d. The market value, or, if no market value, then the actual value of the shares of stock.

"4th. The total amounts of all indebtedness except for current expenses for operating the road.

"5th. The total listed valuation of all its tangible property in this State.  Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the. auditor of State."

Section 137 provides:

"Sec. 137. Said board shall also assess the railroad property, denominated in this act as 'railroad track' and 'rolling stock,' at its true cash value, and said board is hereby given the power and authority, by committee or otherwise, to examine persons or papers."

Between April 1, 1890, and April 1, 1891, the plaintiff in error, plaintiff below, was created by the consolidation of several corporations theretofore existing. Its entire length of main track was 1145.87 miles, of which 647.42 miles were in Indiana, 27.99 in Illinois, 403.33 in Ohio, 19.48 in West. Virginia, and 47.65 in Pennsylvania. The Indiana portion of the property belonging to this corporation, including both railroad track and rolling stock, was assessed in 1890 at $8,538,053. The assessment of the like property under the act of 1891 amounted to $22,666,470. Thereafter and on April 19, 1892, the company commenced this suit in the Superior Court of Marion County, to restrain the collection of taxes based upon the assessment of 1891, on the double ground that the act of 1891 was unconstitutional, and that if constitutional it had been so administered as to create an illegal assessment of the company's property. A tender was made of the amount which would be due according to the valuation placed upon the property in 1890, and, as we understand, this amount has been, under an arrangement between the parties, paid into the different county treasuries. Issue having been joined, the case was heard and a decree rendered finding the equity of the case with the defendants, and denying the application for an injunction. On appeal to the Supreme Court of the State this ruling was sustained. To reverse the final decree of that court the plaintiff sued out this writ of error.

*Mr. John M. Butler* (with whom were *Mr. S. O. Pickens, Mr. Alpheus H. Snow,* and *Mr. John M. Butler, Jr.,* on the brief,) for plaintiff in error.

*Mr. Alonzo Greene Smith,* Attorney General of the State of Indiana, and *Mr. William A. Ketcham* for defendant in error.

*Mr. John W. Kern* and *Mr. Albert J. Beveridge* were with them on the brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The decision of the Supreme Court of the State removes from this case all questions of conflict between the act and the constitution of the State, and the only matter remaining for our consideration is whether there is in the act as administered any trespass upon rights which the Federal Constitution secures to the plaintiff. Notwithstanding the elaborate attack made both in brief and argument upon this act, it seems to us that its constitutionality has been practically settled by decisions of this court, especially those in *State Railroad Tax Cases,* 92 U. S. 575, and *Kentucky Railroad Tax Cases,* 115 U. S. 321. In both of those cases legislation providing for the assessment of railroad property by a state board, while all other property in the State was assessed by county officials, was held to be obnoxious to no provision in the Federal Constitution. Counsel deny the applicability of those two cases, on account of differences between the constitutions of Illinois and Kentucky and that of Indiana, the constitution of Illinois expressly authorizing the legislature to classify property for taxation, and only requiring uniformity as to the class of property upon which the particular law operates, and that of Kentucky containing no provision requiring taxes to be levied by a uniform method upon all descriptions of property. A sufficient answer to this is that the decision of the Supreme Court of Indiana in this case is conclusive upon us that the constitution of that State authorizes just the method of assessment adopted in this case.

It is contended specifically that the act fails of due process of law respecting the assessment, in that it does not require notice by the state board at any time before the assessments are made final, and several authorities are cited in support of the proposition that it is essential to the validity of any proceeding by which the property of the individual is taken that notice must be given at some time and in some form, before

the final adjudication. But the difficulty with this argument is that it has no foundation in fact. The statute names the time and place for the meeting of the assessing board, and that is sufficient in tax proceedings; personal notice is unnecessary. In *State Railroad Tax cases*, page 610, are these words, which are also quoted with approval in the *Kentucky Railroad Tax cases :*

" This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong ; and, in the business of assessing taxes, this is all that can be reasonably asked."

Again, it is said that the act does not require the state board to grant to the railroad companies any hearing or opportunity to be heard for the correction of errors at any time after the assessments have been agreed upon by the board, and before they are made final and absolute, or before the final adjournment of the board, and also that it gives to the board arbitrary power to deny to plaintiffs any hearing at any time ; but the fact and the law are both against this contention. The plaintiff did appear before the board, and was heard, by its counsel and through its officers, and the construction placed by the Supreme Court of the State on the act — a construction which is conclusive upon this court — is that the railroad companies are given the right to be present and to be heard.

It is urged that the valuation as fixed was not announced until shortly before the adjournment of the board, and that no notice was given of such valuation in time to take any steps for the correction of errors therein. If by this we are to understand counsel as claiming that there must be notice and a hearing after the determination by the assessing board as well as before, we are unable to concur with that view. A hearing before judgment, with full opportunity to present all the evidence and the arguments which the party deems important, is all that can be adjudged vital. Rehearings, new trials, are not essential to due process of law, either in judicial or administrative proceedings. One hearing, if ample, before judgment,

satisfies the demand of the Constitution in this respect.  It
not unfrequently happens in this, as in all other courts, that
decisions are announced and judgments entered on the last
day of the term, and too late for the presentation or consider-
ation of any petitions for rehearing or motions for a new trial.
Will any one seriously contend that a judgment thus entered
is entered in defiance of the requirements of due process of
law, and that a party, having been fully heard once upon the
merits of his case, is deprived of the constitutional protection
because he is not heard a second time?·

Equally fallacious is the contention that, because to the
ordinary taxpayer there is allowed not merely one hearing
before the county officials, but also a right of appeal with a
second hearing before the state board, while only the one
hearing before the latter board is given to railroad companies
in respect to their property, therefore the latter are denied
the equal protection of the laws.  If a single hearing is not
due process, doubling it will not make it so; and the power
of a State to make classifications in judicial or administrative
proceedings carries with it the right to make such a classifi-
cation as will give to parties belonging to one class two hear-
ings before their rights are finally determined, and to parties
belonging to a different class only a single hearing.  Prior to
the passage of the Court of Appeals act by Congress, in 1891,
a litigant in the Circuit Court, if the amount in dispute was
less than $5000, was given but a single trial and in that court,
while if the amount in dispute was over that sum the defeated
party had a right to a second hearing and in this court.  Did
it ever enter into the thought ·of any one that such classifica-
tion carried with it any denial of due process of law?

Again the act is challenged as permitting and requiring the
assessment and valuation of property outside the State.  This
contention is based largely on the provision in section 80 that
the "rolling stock shall be listed and taxed in the several
counties . . . in the proportion that the main track used or
operated in such county . . . bears to the length of the main
track used or operated by such person, company, or corpora-
tion," and the requirement in the schedule to be returned to

the auditor of State of a statement of the amount of capital stock and indebtedness. We do not think that the matters referred to justify any such imputation. It is not to be assumed that a State contemplates the taxation of any property outside its territorial limits, or that its statutes are intended to operate otherwise than upon persons and property within the State. It is not necessary that every section of a tax act should in terms declare the scope of its territorial operation. Before any statute will be held to intend to reach outside property the language expressing such intention must be clear. Section 79, which refers to the matter of "railroad track," in terms provides that "the value of 'railroad track' shall be listed and taxed in the several counties, townships, cities, or towns in the proportion that the length of the main track in such county, township, city, or town bears to the whole length of the road in this State, except the value of the side or second track, and all the turnouts, and all station-houses, depots, machine shops, or other buildings belonging to the road, which shall be taxed in the county, township, city, or town in which the same are located." And while section 80, treating of rolling stock, does not repeat this express limitation, yet it is manifestly implied, not merely from its following immediately after section 79, and from the general scope of the act, but also from the schedule required to be returned to the auditor of State, the first and second clauses of which are as follows :

"*First.* Of the property denominated 'railroad track,' giving the length of the main and side or second tracks and turnouts, and showing the proportions in each county and township, and the total in the State.

"*Second.* The rolling stock, whether owned or hired, giving the length of the main track in each county, and the entire length of the road in this State."

It is obvious that the intent of this act was simply to reach the property of the railroad within the State, and these provisions in respect to apportionment relate simply to apportionment between the different counties, townships, towns, cities, etc., within the State. No intent to the contrary can be deduced

from the provision requiring the corporation to file a statement of its total stock and indebtedness, for that is one item of testimony fairly to be considered in determining the value of that portion of the property within the State. The stock and the indebtedness represent the property. As said by Mr. Justice Miller in *State Railroad Tax cases*, (page 605):

"When you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock."

In *Franklin County* v. *Nashville, Chattanooga &c. Railway*, 12 Lea, 521, 539, the Supreme Court of Tennessee, in a well-considered opinion, which was quoted with approval by this court in *Columbus Southern Railway* v. *Wright*, 151 U. S. 470, 479, thus referred to the means of ascertaining the value of a railroad track:

"The value of the roadway at any given time is not the original cost, nor, *a fortiori*, its ultimate cost after years of expenditure in repairs and improvements. On the other hand, its value cannot be determined by ascertaining the value of the land included in the roadway assessed at the market price of adjacent lands, and adding the value of the cross-ties, rails, and spikes. The value of land depends largely upon the use to which it can be put, and the character of the improvements upon it. The assessable value, for taxation, of a railroad track can only be determined by looking at the elements on which the financial condition of the company depends, its traffic, as evidenced by the rolling stock and gross earnings in connection with its capital stock. No local estimate of the fraction in one county of a railroad track running through several counties can be based upon sufficient data to make it at all reliable, unless, indeed, the local assessors are furnished with the means of estimating the whole road."

Counsel sought in argument to narrow the meaning of

the words "railroad track" and "rolling stock" as though
the two did not include the entire railroad property; but evi-
dently the Supreme Court of the State construed, and as we
think properly, the two terms as embracing all which goes to
make up what is strictly railroad property. By section three
of the act, it is provided that all property in the State shall
be subject to taxation unless expressly exempted. By section
four, that when the property of a corporation is taxed to the
corporation the shares held by individuals shall not be subject
to taxation. There is in terms no exemption of any railroad
property, or any part thereof; and there is no provision of the
tax law reaching that which is strictly railroad property, ex-
cept as embraced within the two terms, "railroad track" and
"rolling stock." Obviously it was assumed by that court,
though the matter is not discussed in the opinion, that by
these two descriptive terms the legislature, carrying out the
declared purpose of subjecting all property within the State
to taxation, not expressly exempted, meant to include all the
property owned or used by the railroad companies in the
operation of their roads, and which may fairly be called
"railroad property." And when the statute provides that
such property shall be assessed at its "true cash value," it
means to require that it shall be assessed at the value which
it has, as used, and by reason of its use.

When a road runs through two States it is, as seen, helpful
in determining the value of that part within one State to know
the value of the road as a whole. It is not stated in this stat-
ute that when the value of a road running in two States is
ascertained the value of that within the State of Indiana shall
be determined absolutely by dividing the gross value upon a
mileage basis, but only that the total amount of stock and
indebtedness shall be presented for consideration by the state
board. Nevertheless, it is ordinarily true that when a rail-
road consists of a single continuous line, the value of one part
is fairly estimated by taking that part of the value of the
entire road which is measured by the proportion of the length
of the particular part to that of the whole road. This mode
of division has been recognized by this court several times

as eminently fair. Thus, in *State Railroad Tax cases,* on page 608, it was said:

"It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole."

And again, on page 611:

"This court has expressly held in two cases, where the road of a corporation ran through different States, that a tax upon the income or franchise of the road was properly apportioned by taking the whole income or value of the franchise, and the length of the road within each State, as the basis of taxation. *The Delaware Railroad Tax Case,* 18 Wall. 206; *Erie Railway* v. *Pennsylvania,* 21 Wall. 492."

The mileage basis of apportionment was also sustained in *Western Union Telegraph Co.* v. *Massachusetts,* 125 U. S. 530; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Maine* v. *Grand Trunk Railway,* 142 U. S. 217; *Charlotte, Columbia &c. Railroad* v. *Gibbes,* 142 U. S. 386; *Columbus Southern Railway* v. *Wright,* 151 U. S. 470. It is true, there may be exceptional cases, and the testimony offered on the trial of this case in the Circuit Court tends to show that this plaintiff's road is one of such exceptional cases, as for instance, where the terminal facilities in some large city are of enormous value, and so give to a mile or two in such city a value out of all proportion to any similar distance elsewhere along the line of the road, or where in certain localities the company is engaged in a particular kind of business requiring for sole use in such localities an extra amount of rolling stock. If testimony to this effect was presented by the company to the state board, it must be assumed, in the absence of anything to the contrary, that such board, in making the assessment of track and rolling stock within the State, took into account the peculiar and large value of such facilities and such extra rolling stock. But whether in any particular case such matters are taken into consideration by the assessing board does not make against the validity of the law, because it does not re-

quire that the valuation of the property within the State shall be absolutely determined upon a mileage basis.

Our conclusion, therefore, is that this act is not obnoxious to any of the constitutional objections made to it. There remains the further question whether, in the actual administration thereof in this case, there has been any illegal assessment of the property of the plaintiff. It is charged that the valuation was increased from $8,538,053 in 1890 to $22,666,470 in 1891, and it is not to be denied that such a great increase suggests that which is unfortunately too common.— an effort to cast an unreasonable proportion of the public burdens upon corporate property. It is stated by counsel for plaintiff in their brief that the increase from 1890 to 1891 in the valuation of all other than railroad property in the several counties through which its road extends was only 43 per cent, while, as appears, that of the property of the plaintiff was more than 150 per cent. Still, it must be borne in mind that a mere increase in the assessment does not prove that the last assessment is wrong. Something more is necessary before it can be adjudged that the assessment is illegal and excessive, and the question which is to be now considered is whether the testimony shows that the assessment made by the state board can be adjudged illegal.

The bill of exceptions discloses. these proceedings on the hearing: The plaintiff offered the record of the action of the state board for the year 1890, showing an assessment, as heretofore stated, so much less than that of 1891, which record was rejected as irrelevant and immaterial. Thereupon the plaintiff offered the record of the proceedings of the board in 1891, which was admitted. This recited the appearance of the plaintiff by its officers, and that they were heard as to the proper valuation. It also contained a table by counties of the assessment as made by the board, closing with this certificate :

"Making liberal allowances for all proper deductions, the state board of tax commissioners has fixed the values of the respective railroads and parts of roads within the State of Indiana for taxation on the first day of April, 1891, as hereinbefore set forth.

"In arriving at the basis for the estimate of said values the board has considered the cost of the construction and equipment of said roads, the market value of the stocks and bonds, and the gross and net earnings of each of said roads, and all other matters appertaining thereto that would assist the board in arriving at a true cash value of the same."

The return made by the plaintiff to the auditor of State for the year 1891, in accordance with the requirements of the statute, was also given in evidence, which return was upon a blank furnished by the auditor, and shows an aggregate valuation of about $8,000,000. This return was sworn to by the general manager and secretary of the company. The second vice-president and general counsel of the plaintiff was called as a witness, and, after testifying to his familiarity with the property, and its value, was asked the value in 1890, but, on objection, this testimony was ruled out. He was permitted, however, to give testimony as to the value in 1891, and his answer fixed that value in the aggregate at $8,538,053, the same value that was placed upon the property by the state board in 1890. He was asked to state the average cash value per mile of the company's property in Indiana, and in the other States into which the company's road extended, treating the portion in each State as constituting a unit, separate and distinct from those of the portions in the other States, but an objection to this was sustained, and the testimony offered ruled out. He then testified as to the terminal facilities in the cities of Chicago and Pittsburgh belonging to the plaintiff, and their great value, and the absence of terminal facilities of any particular value in any of the cities in Indiana. He was then asked if the plaintiff owned any rolling stock which was used exclusively in any one of the five States in which it did business, but this question was ruled out. In response to further questions he testified that the plaintiff had no rolling stock used exclusively within the State of Indiana for special purposes. Certain questions were also asked as to the notice or knowledge which the plaintiff had of the determination made by the state board in 1891 as to the valuation, but we have heretofore held that it is immaterial whether it had any

notice thereof after the decision and prior to the adjournment of the board. The assistant engineer of the plaintiff was also called as a witness, and producing a written statement which he had presented to the state board prior to its determination, which statement goes at length into the mileage in the different States, the gross earnings, per cent of earnings, and the value of the track, testified that the facts in such written statement were true. Another witness, the assistant comptroller of the plaintiff, was asked what per cent of the gross receipts of its Indiana business was derived from commerce, beginning and ending wholly within the State and what from interstate business ; but, on objection, this testimony was ruled out. The secretary of State, who was a member of the state board, was also called, and testified that the members of the board did not make an official examination or inspection of the railroad track and rolling stock of the plaintiff, being personally acquainted therewith ; that they did not summon before them, or examine under oath, any person or persons acquainted with the true cash value of the property. The plaintiff also offered the return made by the Terre Haute and Indianapolis Railroad Company to the auditor of State for the year 1891, prepared upon the same form as that upon which the plaintiff's return was made, but it was ruled out as irrelevant and immaterial, as well as the action taken by the state board in respect to the valuation of the property of such road. This was, in substance, all the testimony offered by the plaintiff.

The defendant simply called the secretary of State, who testified that in assessing the plaintiff's property no assessment was made, except upon the railroad track and rolling stock of plaintiff within the State, and no assessment was made of any property of value outside the State.

Upon this testimony the decision of the court was that there was nothing to impeach the assessment made by the state board, and in this conclusion we concur. The true cash value of the plaintiff's property in the State of Indiana in the year 1891 was a question of fact, the determination of which for the purposes of taxation was given to this special tribunal, the state board. Whenever a question of fact is thus submitted

to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and if such determination comes into inquiry before the courts it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined. Here the question determined by the state board was the value of certain property. That determination cannot be overthrown by the testimony of two or three witnesses that the valuation was other than that fixed by the board. It is true such testimony may be competent, and was received in this case because, taken in conjunction with other testimony, it might establish fraudulent conduct on the part of the board sufficient to vitiate its determination. It is not, however, contended by counsel that there was any actual fraud on the part of that board; that the individual members thereof deliberately violated the obligations of their oaths of office, and intentionally placed upon the property of the plaintiff a valuation which they knew to be grossly in excess of that which it in fact bore, and did so with the purpose of making the plaintiff bear a larger share of the burden of the support of the state government than it rightfully should. The contention is rather that the board made a grievous mistake in placing so high a value, and that it took into consideration property outside of the State, and gave to the property within a value partly deduced from that without the State. The testimony, however, does not sustain this contention.

The certificate of the state board does not show that it reached its determination of the value of the property in Indiana by first ascertaining the total value of the company's property, and then dividing it on the mileage basis. It simply shows that it considered the matters which by the statute were required to be presented to it by the railroad company, as well as all other matters which in its judgment bore upon the question of value, and from such consideration reached the result announced, to wit, the value of that part of the company's road in the State of Indiana. Evidence that there were peculiar matters which gave to portions of the road outside of Indiana an enormous value as compared with the

general line of the road does not prove that the board did not take those peculiar matters into consideration. On the contrary, the reasonable presumption is that if its attention was called by the company to those facts it did take them into consideration in connection with the information derived from the total amount of stock and indebtedness of the company. Indeed, its certificate is affirmatively that it took into consideration "all other matters appertaining thereto that would assist the board in arriving at a true cash value" of the parts of the road within the State of Indiana. That the aggregate value of the entire property of the company was evidence properly receivable and bearing upon the question of value of that part in Indiana is a proposition which, as we have heretofore said, is clearly established both on reason and authority. There is no evidence that the board had before it or considered any matter in reaching its determination which was not properly receivable and properly to be considered. A comparison of the assessment placed by the board upon the property of this plaintiff with that placed by it upon other roads, or portions of roads, within the State is immaterial unless coupled with an offer to show an identity in value, so that the case narrows itself down to this: Is testimony that the value placed by the board was excessive, together with testimony that portions of the road outside of the State were of largely greater value than any similar length of road within the State, unaccompanied with evidence that the board reached the valuation by simply dividing the total value of the company's property on a mileage basis, or that it failed to take into consideration the fact of such excessive value of portions outside the State, sufficient to impeach its determination? This question must be answered in the negative. No determination of a special board, charged under the law with the duty of placing a value upon property, can be successfully impeached by such meagre testimony.

These are all the questions presented in this record, and notwithstanding the shadow cast upon the action of the board by this large increase in valuation, we are forced to the conclusion not only that the act is not open to the objections

made to its constitutionality, but also that there is no sufficient testimony to impeach the conclusion and determination of the state board. The judgment of the Supreme Court of the State of Indiana is, therefore,

*Affirmed.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE BROWN, dissenting.

The statute of Indiana of March 6, 1891, as construed by the Supreme Court of that State, authorized the State Board of Tax Commissioners, in assessing the "railroad track" and "rolling stock" of the company in the State, to ascertain the market value of its property and interests of every kind, within and without the State, including capital stock, bonds, earnings, franchise, equipment, etc.; and, that being done, to take as the value of the company's track and rolling stock in Indiana for taxation such proportion of that aggregate amount as the number of miles of its road in that State bore to the aggregate miles of its road or roads within and without the State. And by this rule of valuation the State Board of Tax Commissioners seems to have been governed. In the official report by the board of its proceedings for 1891, showing the basis on which the values of the railroads and parts of roads within the State had been fixed, it is said that, "in arriving at the basis for the estimate of said values the board has considered the cost of the construction and equipment of said roads, the market value of the stocks and bonds, and the gross and net earnings of each of said roads, and all other matters appertaining thereto that would assist the board in arriving at a true cash value of the same." The forms of printed returns supplied to railroad companies show that they were required to report such values and earnings in respect of all their property of every kind, wherever situated. Under the mode of assessment pursued, property was taxed in Indiana that had no situs there, which was used in interstate commerce outside of Indiana, and could not properly be included in the company's railroad track and rolling stock in that State. I am of opinion that the statute as construed and

enforced by the State imposed illegal burdens upon interstate commerce under the guise of a valuation for purposes of taxation of property within the State. The board had no authority to impart to the value of railroad track and rolling stock, within the State, any part of the value of the company's various interests and property without the State.

There was some contention at the bar as to whether the state board, in fact, proceeded according to the rule of valuation to which I have referred. If I am in error in saying that it appears, affirmatively, from the record, that the board applied that rule, there can be no doubt that the state court construed the statute as authorizing the adoption of such a rule. It is equally clear that evidence to prove that the board acted upon that rule was offered and excluded, and that a proper exception was taken. Such action upon the part of the court was itself sufficient to raise the question whether the statute, as interpreted by the state court, and as administered by the state authorities, was not obnoxious to the objection that it permitted illegal burdens to be imposed, under the guise of local taxation, upon interstate commerce, and the taxation of property not within the jurisdiction of Indiana.

Without referring to other grounds discussed at the bar, I dissent from the opinion and judgment in this case upon the grounds above stated.

I am authorized by MR. JUSTICE BROWN to say that he also dissents.

MR. JUSTICE JACKSON did not hear the argument in this case, or take any part in its decision.