Matter of the Appraisal for Taxation of the Estate of SARAH ROCKWELL FULLER, Deceased.

(Surrogate's Court, Westchester County, May, 1901.)

Transfer tax — A county treasurer cannot act as appraiser — Construction of L. 1901, ch. 173, §§ 5, 12, 18.

So much of chapter 173 of the Laws of 1901 as provides that, in Westchester county, until Jan. 1, 1902, the county treasurer shall be designated as transfer tax appraiser and allowed a percentage of the tax, conflicts with the constitutional provision that no person shall be deprived of property "without due process of law" as the county treasurer, exercising as an appraiser judicial powers and duties, is given by the statute a personal interest in the tax and therefore cannot be deemed an impartial officer to assess it.

Assuming that the right of inheritance is a mere privilege controllable by the Legislature, it must be regulated by equal laws and the transfer tax cannot lawfully be assessed in Westchester county by an interested appraiser and in another county by an impartial one.

The remedy of an appeal from the appraiser's report does not cure the vice of a statute which permits the first hearing to be had before an interested person, and particularly where the powers of the surrogate, on such an appeal, are so limited as is the case under the Tax Law.

APPLICATION for the appointment of an appraiser under the law relating to the taxable transfers of property.

C. H. & J. A. Young, for petitioners.

Frank M. Buck, for county treasurer and State Comptroller.

SILKMAN, S. Application is made for the appointment of an appraiser under the law relating to the taxable transfers of property. General Laws, chap. 24. The Legislature of 1901, by chapter 173 of its laws, passed an amendment to this law varying its provisions in many respects, and particularly as to the manner of appraisement.

The question is, whether this amendment violates that law of the land which Legislatures even cannot limit or transcend, namely, " that no person shall be deprived of life, liberty or property without due process of law."

The act of 1901 provides (section 5) for the appointment by the State Comptroller of salaried appraisers in the counties of New York, Kings, Albany, Dutchess, Erie, Monroe, Onondaga, Orange, Queens, Rensselaer, Richmond, Suffolk and Westchester. It provides that in the other counties of the State the surrogate shall direct the county treasurer to make the appraisement. It also provides (section 18) that " This act shall take effect April first, nineteen hundred and one, except that salaried appraisers for the counties of Albany, Queens, Suffolk, Westchester, Dutchess, Monroe, Oneida, Onondaga, Orange and Rensselaer shall not be appointed before January first, nineteen hundred and two, and *until such time such counties shall be deemed counties in which the office of appraiser is not salaried under the provisions of this act.*" Thus in the county of Westchester the surrogate,

under the provisions of the amended law, until January 1, 1902, is required to designate the county treasurer as the appraiser. The act provides for the county treasurer's compensation in the following language (section 12): "The treasurer of each county in which the office of appraiser is not salaried shall be allowed to retain on all taxes paid and accounted for by him each year under this article, five per centum on the first fifty thousand dollars, three per centum on the next fifty thousand dollars, and one per centum on all additional sums. Such fees shall be in addition to the salaries and fees now allowed by law to such officers." It thus appears that the county treasurer's compensation depends upon the amount of the tax; the amount of the tax depends upon the appraised value of the property transferred; consequently the county treasurer has a substantial personal interest in the valuation of the property.

The language of the Fourteenth Amendment to the Federal Constitution has been adopted in substantially the same words in the Constitutions of each of the several States. It is, therefore, by the approval of the several States, and by the people of each of the States, that this constitutional safeguard quoted has come into existence. No judicial writer has ever attempted to limit the words " due process of law " as used in the Constitution, or to define its meaning, except as to the specific matter in respect of which he was called upon to consider it. Webster, in the Dartmouth College case, said: " By the law of the land is most clearly intended the general law — a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities, under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land." Judge Story's definition is, that " due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one being dealt with belongs." Mr. Justice Miller, of the United States Supreme Court, in the case of Davidson v. Board of Administration of New Orleans, 17 Alb. L. J. 223, said that it would be wiser to leave the meaning

of due process of law to be evolved " by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded."

There can be no doubt that the compulsory contributions by citizens towards the expenses of government through taxation are protected by the constitutional provision requiring due process of law before one's property is taken.   Stuart v. Palmer, 74 N. Y. 183; Barhyte v. Shepherd, 35 id. 238; Clark v. Norton, 49 id. 243.  Most of the authorities in respect of the imposition of taxes and assessments affect only the question of notice and an opportunity to be heard before such imposition; nevertheless, it is thoroughly well established that the opportunity to be heard contemplated, must be before a fair, impartial and unprejudiced judge, officer or tribunal.   Judge Earl said, in the case of Stuart v. Palmer, *supra:*   " It may, however, be stated generally that due process of law requires an *orderly* proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce and protect his rights." In the case of Wynehamer v. People, 13 N. Y. 378, Judge Comstock quotes Justice Chase, of the United States Supreme Court, as follows: " There are certain vital principles in our free republican governments which will determine and overrule an apparent and flagrant abuse of legislative power; as to authorize manifest injustice by a positive law, or to take away that security for personal liberty or private property, for the protection whereof government was established.  A few instances ", he adds, " will suffice to explain what I mean; a law that punishes a citizen for an innocent action or in other words, for an act which, when done, was in violation of no existing law — a law which destroys or impairs the lawful private contracts of citizens — *a law that makes a man judge in his own case* — a law that takes property from A. and gives it to B.  It is against all reason and justice for a people to entrust a legislature with such powers, and therefore it cannot be presumed that they have done it." In the case of People v. Marx, 99 N. Y. 377, Judge Rapallo said: " Equal rights to all are what are intended to be secured by the establishment of constitutional limits to legislative power, and impartial tribunals to enforce them."

Under the Constitution property cannot be taken except in a

proceeding judicial in its nature. In Gilman v. Tucker, 128 N. Y. 190, Chief Judge Ruger said: "It is laid down in Cooley's Constitutional Limitations *as an elementary principle* * * * that forfeiture of rights and properties cannot be adjudged by legislative acts, and confiscation, without a judicial hearing after due notice, will be void as not being due process of law." The proceeding need not be what is ordinarily termed a judicial one in a court of law; nevertheless, it must be conducted in a judicial manner. In Stuart v. Palmer, above cited, Judge Earl said on this point: "Due process of law is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. Weimer v. Brueinbury, 30 Mich. 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights." The judicial proceeding contemplated is that defined by Mr. Justice Edwards in Westervelt v. Gregg, 12 N. Y. 202: "Due process of law undoubtedly means in due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." Judge Cooley, in his work on Constitutional Limitations, says: "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs."

And this brings us to the consideration of the question of the interest and necessary bias and prejudice of the officer that the Legislature has chosen to make the appraisement. No principle of law is older or more fixed in the judicature of the State than that no one ought to be a judge in his own cause, and so manifestly just is this rule that Lord Coke has laid it down that "even an Act of Parliament made against natural equity as to make a man a judge in his own case is void in itself." In the case of People v. Wheeler, 21 N. Y. 82, Judge Wright said: "No judge or officer exercising judicial authority should take part in the decision of any matter or controversy, in which he is personally interested, nor in any cause in which he would be excluded as a juror from consanguinity to either of the parties personally interested in the litigation or matter to be judicially determined." It may be that there are some limitations upon this

rule, and the interest which disqualifies is one that is substantial and immediate, not remote, such as the interest which one has as a taxpayer, in a community, or as an assessor or highway commissioner of a municipality wherein the interest is in common with others. Under the Transfer Tax Act, as amended by the 1901 statute, the interest of the county treasurer is immediate, substantial and personal, and it bears no resemblance to the interest of an assessor, in a municipality, whose compensation depends in no way upon the performance of a statutory duty. "In estimating value taxing officers act judicially." Hagar v. Reclamation District, 111 U. S. 701; Stuart v. Palmer, cited above. The transfer tax itself confers, upon the appraiser judicial powers; he is directed to give notice by mail to all persons who have, or claim, an interest in the property to be appraised; of the time and place of appraisement; he is authorized to issue subpœnas, to compel the attendance of witnesses, to take evidence of such witnesses under oath, and to make a report of the value in writing to the surrogate, together with the depositions of the witnesses examined. From the above considerations, it follows that the assessment of the transfer tax is the depriving a person of property, and that this can only be done by due process of law. Due process of law implies a judicial proceeding. The appraiser, in appraising the property, acts judicially. Such proceedings must be taken and procedure had as the settled maxims of the law permit and sanction. It is a settled maxim of the law that a judicial officer shall not take part in a decision or controversy in which he is personally interested. The county treasurer is personally interested in the appraisement of the property under the Transfer Act. Consequently, it must be held that the act of 1901 is unconstitutional, in so far as it requires the appraisement to be made by the county treasurer.

The vice of unconstitutionality does not extend to the entire act, but only to the amendments in so far as they direct an appraisement before an interested officer. These only fail, with the result that the original act, in reference to the method of procedure provided by it for the appointment of appraisers by the surrogate, still continues to be the law, and will be observed in this case.

The suggestion has been made that the right of inheritance is a privilege granted by the Legislature, and can be taken away without violating the Constitution. In his book upon the Four-

Surrogate's Court, Westchester County, May, 1901.     [Vol. 34.

teenth Amendment to the Constitution of the United States, Mr.
Guthrie ably maintains that it is a common-law right, and that
the only power that legislatures have is to regulate it within cer-
tain limitations.   However this may be, it was held in the Illi-
nois Inheritance Tax Cases, 170 U. S. 283, that, even " if the
power of devise or of inheritance be privileged, it must be con-
ferred or regulated by equal laws."   If, therefore, the power of a
Legislature is restricted under the Constitution in this regard, it
must be to the full extent of the spirit of the Fourteenth Amend-
ment.   A person's property can only be taken by virtue of equal
laws impartially administered.   It cannot be maintained that the
transfer tax assessed in one county by an interested appraiser was
assessed on an equality with a tax assessed in another county by
an impartial appraiser.

My attention has been called to the Matter of McPherson,
104 N. Y. 306, in which the constitutionality of the act of 1885,
taxing inheritances, was under consideration.   In that case Judge
Earl says:   " Then there is the right of appeal provided for in
the same section.   Any person dissatisfied with the appraisement
or assessment may appeal therefrom to the surrogate of the
proper county, on paying or giving security to pay all costs and
the tax as fixed by the court.   Upon such appeal there is another
opportunity. to be heard.   The appeal is not limited to questions
of law, but may be taken to the surrogate upon both the law
and the facts, and he has ample power to correct any error
brought to his attention.   For the purpose of making such correc-
tion, he is not bound by the estimate of the appraisers, or by the
facts which appeared before him; but he may hear such new
evidence and allegations as may be properly. presented to him."
There was no such question in the McPherson case as is now
presented to the court, and I do not think the language of that
case can be tortured or twisted into the proposition that, because
there is the right of appeal, it makes no difference whether the
original hearing is before an interested or prejudiced appraiser or
not.   The Constitution, under the term " due process of law,"
guarantees a fair trial and hearing before an impartial tribunal,
in the first instance only.   Pittsburgh, C. C. & St. L. R. Co.
v. Backus, 154 U. S. 421; Indianapolis & V. R. R. Co. v.
Backus, id. 438; McKane v. Durston, 153 id. 684; Andrews
v. Swartz, 156 id. 272; People v. Trezza, 128 N. Y. 529.   Under
these authorities, it is clear that the Legislature has the

power to take away the right of appeal at any time without violating any of the constitutional rights of the people. I apprehend, however, that, even if the right of appeal could not be taken away, the right to an impartial trial or hearing, in the first instance, still existed. The very thought that the Legislature might permit a hearing, at any stage, before an interested and partisan official, is repugnant. It may readily be conceived that, in many cases, it would be difficult to overcome on appeal a finding, in the first instance, which was dictated by personal interest. I have, therefore, no hesitation in saying that the remedy by appeal will not cure the vice in a statute which authorizes a trial, in the first instance, before an officer confessedly interested in the result. But, even if this were not so, the law of 1885 differs materially from the present Transfer Tax Law in this respect: The law of 1885 did not make the surrogate's duty in assessing and determining the tax purely ministerial, while the present law does; in that there have been inserted the words " as of course," wherein it provides for the determination by the surrogate of the cash value of all assets, and the amount of taxes to which the same are liable. Under the act as it has existed since 1892, the surrogate must enter the decree assessing the tax upon the appraiser's report " as of course." The act does not authorize or permit the surrogate to consider anything further than the record from which the appeal is taken. There is no authority in the act for the surrogate to take further evidence, or consider anything except the appraiser's report and such depositions or evidence as were before the appraiser. The jurisdiction of a surrogate is confined by the covers of the books containing the session laws. In the Matter of Davis, 149 N. Y. 539, it was said: " That the surrogate could only hear upon appeal the errors of the appraisers assigned in the notice of appeal."

I can find no force in the suggestions made by the counsel for the county treasurer and State Comptroller, and must, therefore, decline to direct the county treasurer of Westchester county to make the appraisement in this case. I will direct the appraisement to be had before an impartial and uninterested appraiser, pursuant to the law and practice in force prior to the act of 1901.

Decreed accordingly.