## MISSISSIPPI POWER & LIGHT CO. v. CITY OF JACKSON, MISS., et al.
### No. 540.

District Court, S. D. Mississippi, Jackson Division.

Jan. 24, 1935.

Green, Green & Jackson and May, Sanders, McLaurin & Byrd, all of Jackson, Miss., for plaintiff.

W. E. Morse, City Atty., J. Morgan Stevens, and Harry M. Bryan, all of Jackson, Miss., for defendants.

HOLMES, District Judge.

The plaintiff, a public utility corporation organized under the laws of Florida, and doing business in this state, prays for an injunction to restrain the defendants, citizens of Mississippi, from the enforcement of a municipal ordinance which provides for substantial reductions in rates to be charged for electricity furnished by the plaintiff to the public within the city of Jackson, Miss. It alleges that the rates are unreasonably low, and that, if forced to abide by them, will be the means of confiscating the property of the plaintiff used and useful in the production of electricity and the distribution thereof to its patrons. The disputed amount involved, exclusive of interest and costs, exceeds the sum or value of $3,000, and the controversy over it is wholly between citizens of different states.

In addition, it arises out of the due process clause of the Fourteenth Amendment of the Constitution of the United States. There is a motion by the defendants to dismiss the bill, on the grounds that the ordinance assailed affects rates chargeable by a public utility, does not interfere with interstate commerce, and was adopted after a reasonable notice and hearing, "and where a plain, speedy, and efficient remedy may be had at law or in equity," in the state courts.

It is apparent that but for the Act of May 14, 1934, 48 Stat. 775, 28 USCA § 41 (1, 1a), known as the Johnson Act, no question could fairly be raised as to the jurisdiction of this court in a controversy of this nature. That act is amendatory of the first paragraph of section 24 of the Judicial Code, and carves out of the prior grant of jurisdiction to the District Courts a specific class of cases falling within a designated category. Its constitutionality is attacked by the plaintiff as violative of article 3 of the Constitution of the United States. Having conferred on the Federal District Courts general jurisdiction of controversies such as this, it is contended that Congress is without power to withdraw the jurisdiction once conferred. In discussing the constitutional power of the legislative branch of the government to deal with the subject, the attorneys for the plaintiff recognize the distinction between the control which Congress has over the practice and procedure of the courts in matters not essential to their judicial competency and efficiency, and those powers which are essential to the existence and efficacy of the entire federal judicial system contemplated by the Constitution. They concede that such methods of practice or procedure as are not indispensable to the exercise of judicial power may be taken away from the inferior federal courts, but if the power sought to be withdrawn is needed to complete the full jurisdiction conferred by the Constitution, or by laws enacted in pursuance of its mandate, they insist that to take it away after it has once been conferred is "to destroy the court and the judicial power pro tanto." From the premise that Congress has no power to destroy the District Courts or to impair their competency to perform their constitutional functions, counsel conclude that the full jurisdiction of the courts which has been conferred under the Constitution must be left unimpaired, or, in making the change, that Congress must establish other courts of like judicial competency. Relying principally on

Martin v. Hunter's Lessee, 1 Wheat. 327, 4 L. Ed. 97, counsel draw a distinction between cases arising under the laws of the United States and controversies between citizens of different states. As to the former, they say that the Constitution makes it mandatory on Congress to vest the whole judicial power in the courts of the United States, while they admit, as to the latter, that Congress has a discretion to confer or withhold judicial power as it sees fit.

It is true that Mr. Justice Story, in Martin v. Hunter, supra, said that it is the duty of Congress to vest the whole judicial power, but this statement has not received the concurrence of either the legislative or judicial branch of the federal government. Even at the time it was made there did not exist in any federal tribunal, other than the Supreme Court, general jurisdiction to hear and determine cases arising under the Constitution or laws of the United States; such jurisdiction was not conferred until the Act of May 3, 1875 (18 Stat. 470). It should also be remembered that Mr. Justice Story then had uppermost in his mind the appellate jurisdiction of the Supreme Court and the constitutionality of an act to re-examine and reverse or affirm state decisions. He was not dealing with a case involving the original jurisdiction of any federal court, but with a writ of error from a state court, the Court of Appeals of Virginia. The sole question for decision before him was the appellate power of the Federal Supreme Court to revise a judgment of the highest court of one of the states of the Union. It involved the constitutionality of the twenty-fifth section of the Judiciary Act of 1789 (1 Stat. 85); and any enunciation of the constitutional duty of Congress to create inferior federal courts and distribute their jurisdiction was broader than the issues submitted in the particular controversy demanded. In other cases there is language commenting upon the use of the word "controversies," in section 2 of article 3 of the Constitution, as in contradistinction to the word "cases," and the omission of the word "all" in respect of controversies; but, as stated by Mr. Justice Sutherland in Williams v. United States, 289 U. S. 553, 568, 53 S. Ct. 751, 756, 77 L. Ed. 1372: "None of these cases involved the question now under consideration, and the expressions referred to were clearly obiter dicta, which, as said by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257, 'may be respected, but ought not to control the judgment in a subsequent suit,

when the very point is presented for decision.'"

In no instance which has been brought to my attention has it been decided directly that Congress may withhold or withdraw the jurisdiction of inferior federal courts in all cases arising under the Constitution or laws of the United States; but that it may confer, enlarge, or contract the same in its discretion is indicated by analogous cases, by parity of legal reasoning, and by a contemporaneous practical construction of the Constitution for a period of 86 years.

What was said in Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 82, 67 L. Ed. 226, 24 A. L. R. 1077, with reference to the extent of the judicial power provided for in article 3 of the Constitution is very pertinent here, and is broad enough in language to include the specific question before me, although in decision it dealt only with such power in relation to controversies between citizens of different states. The court said: "The effect of these provisions is not to vest jurisdiction in the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates. Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. Turner v. Bank of North America, 4 Dall. 8, 10, 1 L. Ed. 718; United States v. Hudson & Goodwin, 7 Cranch, 32, 3 L. Ed. 259; Sheldon v. Sill, 8 How. 441, 448, 12 L. Ed. 1147; Stevenson v. Fain, 195 U. S. 165, 25 S. Ct. 6, 49 L. Ed. 142. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. The Mayor of Nashville v. Cooper, 6 Wall. 247, 252, 18 L. Ed. 851. And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall. The Assessors v. Osborne, 9 Wall. 567, 575, 19 L. Ed. 748. A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, can-

not well be described as a constitutional right."

The fact that from 1789 to 1875 general jurisdiction was not conferred on inferior federal courts in suits arising under the Constitution or laws of the United States is a strong argument that the exercise of the power by Congress to vest such jurisdiction is not mandatory under the Constitution, but is "remitted without check or limitation to the wisdom of the legislature." Mayor of Nashville v. Cooper, 6 Wall. 247, 252, 18 L. Ed. 851. In the case just cited, the court further said: "As regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. Their concurrence is necessary to vest it. It is the duty of Congress to act for that purpose up to the limits of the granted power. They may fall short of it, but cannot exceed it. To the extent that such action is not taken, the power lies dormant. It can be brought into activity in no other way."

A historical glance at the original structure and development of the federal judicial system in respect to the narrow constitutional subject at issue will reveal that the validity of similar legislation has been taken for granted in many cases and in no instance has been challenged with success. In general, the cases to which the federal judicial power extends, under article 3 of the Constitution, may be divided into two main classes; the first includes all those arising under the Constitution, laws, or treaties, and the second, those between citizens of different states, between a state and citizens of another state, and between a state, or the citizens thereof, and foreign states, citizens, or subjects. In the first class, it is the character of the suit which gives jurisdiction without reference to the character of the parties; in the second, it is the character of the parties without reference to the subject of the controversy. Diversity of citizenship has been a ground of jurisdiction in the lower federal courts from the foundation of the government to the present time. In the original Judiciary Act of September 24, 1789, the amount in controversy necessary to give jurisdiction was $500, and the venue might be laid in any district in which the defendant could be found. The policy of Congress to contract this jurisdiction has been manifested

by legislation increasing the required amount involved, first to $2,000, later to $3,000, and by withdrawing the permission to file the suit in any district where the defendant may be found. At present suit must be brought in the district of which the defendant, or one of the defendants, is an inhabitant, except where the sole ground is diversity of citizenship, in which case it may be brought in any district of which either the plaintiff or defendant is an inhabitant.

We have noted that although a case involved a federal question, it could not, until 1875, be brought in the federal court for that reason alone (Nashville, C. & St. L. Ry. Co. v. Taylor (C. C.) 86 F. 168, 173, 174). By an Act of March 3, 1875, Congress passed a jurisdictional and removal statute of suits involving federal questions. The required jurisdictional amount was the same as in diverse citizenship cases, and subsequent increases for like purposes of restriction of jurisdiction were also the same. The policy to keep specific classes of litigation out of the federal courts was evidenced in other restrictive legislation. National banking associations established under the laws of the United States for the purpose of ordinary actions by or against them are deemed citizens of the states in which they are respectively located. In 1915 jurisdiction of suits by railroads chartered under federal laws was withdrawn from the District Courts (Act Jan. 28, 1915, § 5, 38 Stat. 804). This act was amended, in 1925 (28 USCA § 42), and took away jurisdiction by or against any corporation upon the ground that it was incorporated under an act of Congress, except in the case of a federal corporation in which the government owns more than one half of the stock. Suits under the Federal Employers' Liability Act (45 USCA §§ 51–59) are denied the right of removal (28 USCA § 71).

■ My conclusion is that the Act of May 14, 1934, withdrawing jurisdiction from this court of certain public utility rate cases, is constitutional. The remaining questions before me are matters of interpreting that act and of applying the facts of this case to the law as amended by it.

■ Jurisdiction is alleged in the bill by the plaintiff, both on the grounds of diversity of citizenship and of repugnancy to the Federal Constitution. Conceding that if only one were relied on the argument would not be good, the plaintiff's counsel contend that the use of the disjunctive "or," instead of the conjunction "and" or the hybrid "and/or," between the grounds of "diversity of citizenship or the repugnance of such order to the Constitution," discloses an intention by Congress to withdraw jurisdiction from the federal courts only in those cases where there is present a single and separate ground, and that where both grounds are relied on the jurisdiction is not taken away; also, that the adverb "solely" modifies both clauses, and that neither is the sole ground if the other is present. The argument is specious but unsound. It proceeds upon the premise that the jurisdictional grounds are joint when they are several and distinct. More accurately, each is a component of a different joint ground, an amount involved in excess of $3,000 being an additional requisite. As diversity of citizenship or a federal question, by section 24 of the Judicial Code, was conferred in the alternative as a distinct and indispensable element of each separate joint ground, in withdrawing the jurisdiction in intrastate utility rate controversies under certain factual conditions, it was proper in the amendatory Act of May 14, 1934, to use a coordinating particle that marks the alternative. The word "solely" modifies the compound phrase and means in the absence of some other valid ground of federal jurisdiction. Each of the constituent parts mentioned being deprived of validity for jurisdictional purposes by the terms of the recent amendatory act, neither can supplement the other to supply a requisite ingredient.

■ There remain to be considered the contentions of the plaintiff that the state rate-making body failed to give the utility a reasonable notice and hearing before adopting the ordinance, which is alleged to be confiscatory, and that a plain, speedy, and efficient remedy may not be had at law or in equity in the state courts of Mississippi. In Georgia Continental Telephone Company v. Georgia Public Service Commission (D. C.) 8 F. Supp. 434, the court expressed grave doubt whether a subordinate legislative agency may consistently with due process fix rates without a hearing, but stated that, irrespective of the power to do so, jurisdiction was retained under the Johnson Act when a reasonable hearing was not in fact given. Except that it must be reasonable, the act does not specify the kind of notice or hearing or prescribe any form or method of practice or procedure. There-

fore, we must look to the fundamental requirements of due process to ascertain the meaning in which the words, "reasonable notice and hearing," were used by the lawmakers. They doubtless used the words in the same sense as the phrase, "due process of law," is used in the Fourteenth Amendment of the Constitution. The vital elements necessary to constitute due process of law are thus stated in Pittsburg, etc., Railway Co. v. Backus, 154 U. S. 421, 14 S. Ct. 1114, 1117, 38 L. Ed. 1031: "A hearing before judgment, with full opportunity to present all the evidence and the arguments which the party deems important, is all that can be adjudged vital." In State of Washington ex rel. Oregon Railroad & Navigation Co. v. Fairchild et al., 224 U. S. 510, 32 S. Ct. 535, 539, 56 L. Ed. 863, dealing with the question of a reasonable notice and hearing by the Railroad Commission of the State of Washington in requiring the railroad to make track connections at certain points, the court said: "Having been given full opportunity to be heard on the issues made by the complaint and answer, and as to the reasonableness of the proposed order, and having adopted the statutory method of review, this company cannot complain. It had the right to offer all competent testimony before the commission, which, in view of the form of proceedings authorized by the statute, acted in this respect somewhat like a master in chancery who has been required to take testimony and report his findings of fact and conclusions of law. The court would test its correctness by the evidence submitted to the master." In Dohany v. Rogers, 281 U. S. 362, 50 S. Ct. 299, 302, 74 L. Ed. 904, 68 A. L. R. 434, the court said: "The due process clause does not guarantee to the citizen of a state any particular form or method of state procedure. Under it he may neither claim a right to trial by jury nor a right of appeal. Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense; due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. Reetz v. Michigan, 188 U. S. 505, 508, 23 S. Ct. 390, 47 L. Ed. 563; [State of Missouri ex rel.] Hurwitz v. North, 271 U. S. 40, 46 S. Ct. 384, 70 L. Ed. 818; Bauman v. Ross, 167 U. S. 548, 593, 17 S. Ct. 966, 42 L. Ed. 270; Backus v. Union Depot Co., supra, page 569 of 169 U. S., 18 S. Ct. 445, 42 L. Ed. 853." See, also, Moore Ice Cream Co. v. Rose, 289 U. S. 373, 53 S. Ct. 620, 77 L. Ed. 1265. In Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 54, 53 L. Ed. 176, objection to rates was made by the utility on the ground that a reasonable notice and hearing were not given, but the court held "that a sufficient notice and hearing were afforded to the appellant, if it had chosen to avail itself of them, instead of declining to furnish all information, as it did."

With this understanding of the character of notice and hearing required to bring the case at bar within the jurisdictional exception carved out by the Act of May 14, 1934, let us briefly examine the undisputed facts as shown by the stenographer's transcript of the proceedings before the mayor and commissioners of the city of Jackson. On November 7, 1934, notice was given to the company to show cause why the rates should not be reduced, and November 20, 1934, at 10 o'clock a. m., was fixed as the time for the hearing. The notice was duly served; the Light Company with its attorney appeared and introduced Mr. Moore, who made an elaborate statement. Being pressed by the city attorney for definite figures as to the appraisal of its properties, the company's attorneys proposed for the city engineers to take the new rates which Mr. Moore had proposed and make a study of them. The morning meeting took a recess until 2 p. m., when the city attorney again called for figures with reference to a rate base. In answer, counsel for the Power Company made a further elaborate statement, but offered no definite figures. After an extended hearing by the municipal board, during which there were many discussions and every opportunity given the utility to introduce evidence, a recess was taken at the request of the attorneys for the plaintiff from Tuesday until the following Monday, November 26, 1934. At this hearing additional counsel appeared for the company and discussed the law and the facts which he contended should be applied in the promulgation of new rates. Also, at this hearing the opportunity to introduce evidence was afforded the company. A further recess was taken until the following Friday at the request of the attorneys for the plaintiff, who stated that Mr. Couch, president of the company, would like to come over and be heard. Pursuant to adjournment, the board met again on the following Fri-

day, and Mr. Couch was present with attorneys and other representatives of the company. They were given further opportunity to be heard, and were heard at length. During the several hearings the mayor, who presided, repeatedly called for facts or statements, and at no time denied the company the opportunity to present evidence or arguments. After a notice and hearing such as was given in this instance before the ordinance assailed was adopted, this court is without jurisdiction in intrastate utility rate cases based solely upon diversity of citizenship or repugnance to the Federal Constitution, provided a plain, speedy, and efficient remedy may be had at law or in equity in the state courts of Mississippi. The fact of a reasonable notice and hearing is all in this respect that need be determined for jurisdictional purposes. This court is not permitted to review the hearing for errors of law or fact by the rate-making body.

 As to relief in the state courts, section 2426 of the Mississippi Code of 1930 provides that the chancery court shall have jurisdiction to review orders of municipal authorities in the matter of fixing rates to be charged by public service companies. There is a suggestion that this section is unconstitutional, because it confers on the chancery court legislative as well as judicial functions. It is not violative of the Federal Constitution for this reason (Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150), and, if it transgresses the State Constitution by blending judicial and legislative functions, comity requires that in a case of this character we leave the state court to deal with the constitutionality of a state statute applicable to its own judicial system; but irrespective of said section 2426, the chancery courts of Mississippi have an independent equitable jurisdiction to prevent by injunction the enforcement of municipal ordinances which are void because confiscatory of the plaintiff's property. Fitzhugh v. City of Jackson, 132 Miss. 585, 97 So. 190, 33 A. L. R. 279.

 For the reasons stated, this court has no jurisdiction of the controversy, not even under the Declaratory Judgments Act of June 14, 1934 (section 274d of Judicial Code [28 USCA § 400]), as that act only confers the power upon courts of the United States to declare rights and other legal relations of interested parties in cases of actual controversy over which the court otherwise has jurisdiction under the Constitution and laws of the United States. It does not extend the general jurisdiction of federal courts to new cases or controversies, but merely creates a new procedural institution or enlarged remedy for the limited classes of cases and controversies cognizable in these courts.

The interlocutory injunction will be denied, and the bill dismissed for want of jurisdiction.