McCORD *et al. v.* ALABAMA GREAT SOUTHERN R. Co.

(Nashville, December Term, 1947.)

Opinion Filed May 3, 1948.

Roy H. Beeler, Attorney-General, William F. Barry, Solicitor-General, Hamilton E. Little, of Memphis, and E. J. Walsh, of Nashville, for plaintiff in error.

Phil B. Whitaker, of Chattanooga (L. M. Abbot of Washington, D. C., Ferriss C. Bailey, of Nashville, and Whitaker, Hall, Haynes & Allison, of Chattanooga, of counsel), for defendant in error.

303

304

MR. JUSTICE PREWITT delivered the opinion of the Court.

This appeal involves the assessment of the properties of the Alabama Great Southern Railroad Company, hereinafter referred to as the Railroad, by the State Board of Equalization, hereinafter referred to as the Board, in Tennessee for *ad valorem* taxes for the biennium 1945-1946. By a petition filed by the Railroad in the circuit court of Davidson County, the circuit judge sustained the grounds for *certiorari* and voided the assessment. It does not appear from the record what was the basis of the circuit judge's decision.

By statute, the action of the Board, in assessing property for taxation belonging to railroads and utilities (Williams' Code, sec. 1535), is final, and our cases hold that the courts will not interfere with the assessments made by the Board unless it has acted illegally, fraudulently, or in excess of its jurisdiction. *Treadwell Realty Co.* v. *City of Memphis*, 173 Tenn. 168, 116 S. W. (2d) 997; *Nashville C. & St. L. Ry.* v. *Browning*, 176 Tenn. 245, 140 S. W. (2d) 71; 310 U. S. 362, 60 S. Ct. 968, 84 L. Ed. 1254.

The Railroad complains of certain acts of the Railroad and Public Utilities Commission, hereinafter referred to as the Commission, and then contends that the assessment approved by the Board is so excessive as to be fraudulent, and that the Board did not "equalize" the assessment with the assessments of other properties in the state.

The Board contends that the assessment was regular in every way; that there was no fraud, illegality, or excess of jurisdiction on its part; that there is ample

evidence to sustain the assessment; that the assessment is not excessive; that the question of the amount of the assessment is merely a matter of judgment; and that the judgment of the Board, in the absence of fraud, is final.

The Board also contends that the Acts of 1945 show it was the intention of the Legislature to authorize a new assessment for the years 1945-1946, and that this assessment supersedes the old assessment.

The Railroad contends that since an assessment was made under the old law in 1944 for the years 1944-1945, neither the Commission nor the Board was authorized to make an assessment in 1945.

This insistence would be good but for the fact that the Legislature passed Chapters 17 and 18 of the Public Acts of 1945. The new Acts gave the Commission authority to make new assessments for the years 1945-1946, and directed that the assessments be made. Chapter 17 of the Acts of 1945 changed the word "even" to the word "odd" in section 1508 of Williams' Code, as amended. We think this makes the law definite that the Commission must assess railroad properties for taxation in the odd years for each biennium.

The question presented is whether the properties of the Railroad in Tennessee, which embrace the leased terminal facilities with its connecting lines in the North, should be assessed by taking into consideration all of the tracks involved in its terminal operations in Chattanooga as being equally important in apportioning the value of the Tennessee properties to the value of the road, or whether the Board should consider that the Railroad has in Tennessee for taxation purposes only the connecting strip of 4.06 miles of main track.

The Railroad insists that it owns only 4.06 miles of what it calls its main track in Tennessee but operates

102.17 miles of track (owning 4.06 miles and leasing 98.11 miles) in Tennessee in connection with its terminals. The Railroad contends that the Board must be confined to the use of 4.06 miles in computing the value of its Tennessee properties.

■ The general rule is that the value of one part of a single continuous line of railroad is fairly estimated by taking that part of the value of the road which is measured by the proportion of the length of the particular part to that of the whole road. This method is what is referred to a "mileage" or "length of the road" method of apportionment. The authorities recognize that this mode of evaluation is not appropriate where portions of the road within or without a particular state are of substantially greater value than other similar portions. One method expressly recognized is the existence in a particular state of terminal facilities of great value. *Nashville C. & St. L. R.* v. *Browning, supra; Pittsburg, C. C. & St. L. R. Co.* v. *Backus*, 154 U. S. 421, 14 S. Ct. 1114, 38 L. Ed. 1031.

■ We do not think Code section 1528 means that all interstate railroads shall be assessed on a "mileage" basis. It is not until "after ascertaining the value of such distributable property wherever situated within the state," that the statute provides for a "mileage" or "length of the road" apportionment.

The Board relies on the case of *Kansas City, F. S. & M. R. Co.* v. *King*, 6 Cir., 1902, 120 F. 614. In that case the Railroad owned only .40 of a mile of main track and 18.51 miles of sidetracks in Tennessee, but owned its eastern terminus located in Memphis, where it used a large number of tracks to make connections, to afford storage room for cars, and the means of handling, re-

ceiving, and delivering freight and making connections there.

The instant case differs from the *Kansas City, F. S. Case, supra*, in that the Fort Scott Railroad owned all its properties in Memphis, where its terminals are located, while the Alabama Great Southern does not own the sidetracks, terminals, and stations, but leases all trackage, stations, and other facilities in Chattanooga, from other railroads which have been properly assessed to them. It appears that the properties so leased are as follows: (1) Belt-Railway Company of Chattanooga assessed at $1,026,532, (2) Chattanooga Station Company assessed at $389.350, and (3) Chattanooga Terminal Railway assessed at $37,500. It is not denied that the respective owners are paying taxes on all of the above-mentioned properties.

It is stated in the brief of counsel for the Railroad:

"The same Railroad Commission that fixed the assessment for 1899 against the Kansas City, Fort Scott and Memphis Railroad Company also assessed for the same period the Tennessee properties of the Alabama Great Southern Railroad Company. Yet neither that Commission, nor any subsequent Railroad Commission of this State, nor any State Board has even attempted to assess the property of the Alabama Great Southern on any such theory as was involved in the *Kansas City, F. S. & M. R. Case*, or, as counsel for the Board belatedly asserted in the face of the record, as it was assessed in 1945."

The Board assessed the properties of the Railroad for 1944-1945 at $760,450. The Railroad admits that these properties at that time had a value of $947,434. The Board then assessed the properties for 1945-1946 at $2,402,032, and this increase is sought to be justified on

the ground that the Railroad held vast terminal facilities in Chattanooga. The Railroad believed that the assessment would be, made in accordance with the assessments of other railroads, and so made its return.

The amount of this assessment as to the Railroad's properties in Tennessee cannot be justified on the "length of the road" formula previously employed, but only on the theory applied in the *Kansas City, F. S Case*. This is a question of fact on which the Railroad was not given an opportunity to present evidence. We, therefore, conclude that the Board deprived the Railroad of its fundamental right to its day in court, and the Railroad may have been materially prejudiced thereby.

As modified, the judgment of the circuit court is affirmed and the case remanded for appropriate proceedings to assess the properties for the 1945-1946 biennium.

All concur.