BROWNING *et al.* v. ALABAMA GREAT SOUTHERN R. Co.
(two cases).

McCORD *et al. v.* ALABAMA GREAT SOUTHERN R. Co.

(*Nashville,* December Term, 1952.)

Opinion filed March 6, 1953.

Petition to Rehear June 5, 1953.

Roy H. Beeler, Attorney General, William F. Barry, E. J. Walsh and Albert Williams, all of Nashville, Special Counsel, Hamilton E. Little, of Memphis, Special Counsel, for plaintiffs in error.

Phil B. Whitaker, of Chattanooga, L. M. Abbot, of Washington, D. C., Ferriss C. Bailey, of Nashville, and Whitaker, Hall & Haynes, of Chattanooga, for defendant in error.

254

PER CURIAM.

These cases present appeals by the State Board of Equalization, hereinafter called the Board, from the judgment of the Circuit Court of Davidson County adjudging void the assessment of the properties in Tennessee of the appellee, The Alabama Great Southern Railroad Company, for ad valorem taxes.

The first of the above styled cases is for the biennium 1945-1946 and involves the reassessment of the Railroad's properties for these years. The second case involves the assessment of the Railroad's properties in Tennessee for the biennium 1947-1948 and the third involves the ad valorem taxes of the Railroad's properties for the biennium 1949-1950, in Tennessee.

The three cases were argued together and as is said by the appellee in each of its briefs:

"Although the assessments for each of the three biennial periods are different in amount, the same fundamental principles of law apply to each of the three cases, and, to a large extent, the essential facts are quite similar in each of the three cases."

This last quoted statement being correct we are therefore writing only one opinion which is applicable to the three cases.

The procedural process through which each of these three cases went was identical with that as is very fully

shown in opinions of this Court in the cases of *McCord* v. *Nashville, C. & St. L. Ry.*, 187 Tenn. 277, 213 S. W. (2d) 196 and *McCord* v. *Southern Ry. Co.*, 187 Tenn. 247, 213 S. W. (2d) 184. The result as reached in the trial court in each of the three cases now before us was identical with that as reached in the last two cited cases and the method by which these cases are now before us was identical with that in the two reported cases last above cited.

The first of these cases now before us was before us in the case of *McCord* v. *Alabama Great Southern Ry. Co.*, 187 Tenn. 302, 213 S. W. (2d) 207, 209, and in this case we affirmed the trial court because the Railroad was not given an opportunity to present evidence on the theory of assessment adopted in this case at that time by the Railroad & Public Utilities Commission. Accordingly we felt that in not thus being given notice of the theory upon which the assessment was to be made this ''deprived the Railroad of its fundamental right to its day in court, and the Railroad may have been materially prejudiced thereby. * * *'' It is true that this Court in delivering the opinion in this case made comment in reference to various other facts, etc., but these were merely by way of reason in arriving at our conclusion for affirming this case. In other words when this case was before us before it was decided entirely on a question of procedural due process. The three cases now before us do not present this question. In other words when the case was here before the Railroad was not fully advised that the assessing authorities were not following the usual mileage or length of the road formula. The situation is different in the present cases because in these cases the Railroad was fully advised that the assessing authorities were going to follow what is generally referred to as the ''Kansas City, Ft. Scott Theory''. This theory comes

from the case of *Kansas City, Ft. Scott & M. R. Co.* v. *King*, 6 Cir., 120 F. 614. In each of the three cases presently before us the assessing authorities followed this theory and fully advised the Railroad prior to making assessments that such theory was to be followed and the Railroad was allowed to introduce testimony to meet this theory of the assessing authorities.

In the Kansas City, Ft. Scott case the court held that a departure from the usual mileage or length of the road formula was justified where the Railroad owned only a fraction of a mile of main track, but had its eastern terminus in Memphis, where it used a large number of tracks to make connection, to afford storage room for cars and the means of handling, receiving and delivering freight and making connections. The situation in the cases presently before us is substantially the same as that as disclosed in the Kansas City, Ft. Scott case. However in the present cases the assessing authorities did not use the identical formula as was used in the Kansas City, Ft. Scott case.

In the Kansas City, Ft. Scott case an allocation factor was arrived at by taking the proportion of all miles of all type track owned in Tennessee to the total mileage of all type of track owned in the system, and the entire assessable properties were allocated on that basis.

In making the initial assessment in the first case now before us the assessing authorities used an allocation factor only with respect to locomotives and cars, which traveled over the entire system and have no fixed situs, and arrived at this allocation factor of taking the proportion of all miles of all types of tracks in Tennessee, owned or leased, to the total system mileage of all type of track owned or leased. We think that such a system or method is fair and it certainly cannot be said that by using this

method the Commission and Board acted illegally or arbitrarily in making the assessment.

In each of the three cases presently before us on appeal from the assessment made by the Commission the Board of Equalization reduced the amounts as fixed by the Commission to some extent in each instance. It might be noted here that the Commission in making each of the assessments in the cases presently before us said:

"The Commission in making this assessment has considered only the properties owned by The Alabama Great Southern Railroad Company and has not considered the properties of its lessors."

It is conceded that the law of the cases presently before us is settled by our opinions in *McCord* v. *Southern Ry., and McCord* v. *Nashville, C. & St. L. Ry.*, supra [187 Tenn. 247, 213 S. W. (2d) 186], and that the statement made in the southern Railroad case as follows is now the law applicable to this case. In the Southern Railroad case the Court among other things said:

"The assessments so made by the Board is by Code Section 1535 made 'conclusive and final' and 'is not open to review by the courts' on the merits. *Nashville, C. & St. L. Ry.* v. *Browning,* 176 Tenn 245, 140 S. W. (2d) 781, 783, affirmed by the U. S. S. C., 310 U. S. 362, 60 S. Ct. 968, 84 L. Ed. 1254. Review may be had only by means of the common law writ of certiorari, and is limited to an examination of the record made before the Board, such examination being permissible only for the purpose of determining whether it is disclosed by that record that the Board has acted illegally, fraudulently, or in excess of its jurisdiction."

We have examined the records in each of these cases and find nowhere any allegations and proof of specific

facts warranting us in finding the existence of a fraudulent purpose on the part of the assessing authorities in fixing the assessments in each of these respective cases.

It is perfectly obvious to a fair minded person that the policy of the law as set forth in the quotation from the Southern Railroad case above is wise and salutary. If every taxpayer who thought his property overassessed had on that ground recourse to the courts for a review of the judgment of the assessors litigation would be unendable. We would become assessors if the rule as above stated were not true and can we say that we as a court or any other court could make the assessments fair or more equal than would the assessors who are presumed to have experience and common sense about what they are doing. We think that this observation is particularly striking where railroad property is concerned. The value of a railroad, operating as a going concern, must and is in most cases a matter of opinion. Railroads necessarily are seldom bought or sold as units and what one or one hundred shares or more of railroad stock would bring upon the stock exchange may or may not be a fair basis by which to estimate the value of the entire system. The market value of that part of the railroad's stocks and bonds for sale upon the open market, may furnish some indication as to its value, as do also the earnings of a railroad company, their invested capital, and a review of their increasing and decreasing traffic, and any number of things which we might think of and mention might be a way on which we could arrive at a value. We do not know nor has the Legislature established any rule by which these factors may be given a greater weight one over the other. Of course circumstances in each instance would vary the case.

Obviously it would be almost impossible to arrive at the value of the entire railroad system with any exactitude. If this is true, which it must be, then of course it must necessarily follow that to arrive at any particular formula for a part of this railroad located in a certain state would be equally hard.

■ The basic argument made in the briefs in these cases on behalf of the Railroad is that an expert offered on their behalf and certain other things is the most reasonable and fair evidence as to the value of the properties of the Railroad in these cases. The record contains much evidence to the contrary and it is not up to us as a Court to pass upon the weight of this respective evidence.

■■ This Court has said of the Board in the instant case that:

"Its actions, having the force and effect of judicial determination, are reflected by its minutes and the records it is required to keep. It is a quasi court sitting in Davidson County." *The Press* v. *Washington County*, 179 Tenn. 435, 167 S. W. (2d) 329, 330.

"In this connection, it is important to keep in mind that 'the good faith of the Commission and Board and the validity of their action are presumed; when assailed, the burden of proof is upon the complaining party.' " *McCord v. Southern Railroad*, supra.

In view of this statement, and it certainly is the law, why should we in this opinion or otherwise debate the facts pro and con in this record offered before the Commission and again before the Board in its de novo hearing of the matter pro and con. Certainly there is no showing where the Board violated any of the rules and principles devolved upon it whereby its action should be set aside.

This Court speaking through the late Chief Justice Green in the case of *Savage Co.* v. *City of Knoxville*,

167 Tenn. 642, 72 S. W. (2d) 1057, decided the very principles that are applicable to the instant cases as well as those in the *McCord* v. *Southern Ry.* cases heretofore referred to. In the Savage case there was an allegation and showing that the assessment made on the Savage property by the City of Knoxville was $18,000 above its cash value, that is $18,000 in reference to what it was claimed as cash value of $42,000. These allegations were made in the petition in that case. This Court speaking through the late Chief Justice Green said:

"No fraud is charged against the board of equalization, nor does it appear that in its procedure that body has disregarded any statutory provisions, except that the petitioner charges that the constitutional and statutory provisions that all properties should be assessed equally and at its value were ignored as to petitioner's property."

That same statement can be paraphrased as to the records in these cases. Here though we do have evidence pro and con upon which the opinions of individuals might differ. The Commission and the Board passed on this and that. The action of the Board being final we see no reason to reexamine these facts. In the Savage case it was further said:

"Obviously, therefore, the petition is merely an effort to have the courts review, upon petition for certiorari, the valuation placed upon the property for purposes of taxation by the duly constituted taxing authorities. Nothing is better settled in this jurisdiction, and everywhere we believe, than that the courts will not undertake such a review, nothing else appearing. As said in the cases, value is a matter of opinion, and the opinion of the courts is not likely to be any better than the opinion of tribunals spe-

cially created to fix property values. It is competent for the Legislature to provide that the findings of such tribunals shall be final so long as they act within their jurisdiction, observe statutory requirements, and there is no fraud.''

The admonitions of the last quoted statement are very applicable to the three cases now before us.

In the first of the cases now before us the Railroad offered a form of testimony known as the Sales Ratio Study. It is argued that this Study of the various sales in Hamilton County and the showing of the assessed value of other property there that this in itself is sufficient upon which to base a petition for certiorari in the instant cases for the Railroad Company. The holding of this Court in *McCord* v. *Nashville, C. & St. L. Ry.* and *McCord* v. *Alabama Great Southern Railroad,* both supra, disposes of this contention though the Sales Ratio Study was not referred to and used there. The principle of law applicable to the Sales Ratio Study was dealt with in the cases referred to when we held that the matter of what weight should be given testimony concerning underassessment of properties in the light of the assessor's oath and statutory duties is a question for the triers of fact, in the instant cases the Board of Equalization.

It is argued in each of the three cases that the fact that the assessment in each of the three was different; the assessment for the biennium of 1949-1950 of the Tennessee properties being so much greater than for 1945-1946 shows or demonstrates within itself that the assessments are excessive and illegal. We cannot agree with this argument. There are obviously many factors that might cause an assessing authority to assess a different valuation each and every year. The record in this case amply substantiates the higher value fixed on the

last year in which the assessment was fixed. This within itself certainly does not justify the petition for certiorari. We have said many times as was said in *McCord* v. *Nashville, C. & St. L. Ry.*, supra [187 Tenn. 277, 213 S. W. (2d) 200], that:

"To justify or warrant such review it must appear that the assessment as finally certified was action illegal, arbitrary, or fraudulent. Illegality includes the question of jurisdiction and authority."

The mere fact of this difference in amounts, regardless of what it is, does not bring the cases within this rule last above quoted. To bring it within the rule the facts must be alleged and proven which would show that the Board acted in one of these illegal capacities. This record does not show such an action.

For the reasons heretofore given we think that the assessment in each of the three cases was in all respects regular and according to law, and that there is no showing of any arbitrary or illegal action on the part of the Board of Equalization or of the Commission. The action of the trial court in each of the cases in overruling the motion to dismiss the petition for certiorari is reversed, the motion to dismiss is sustained, and the petition for certiorari is dismissed at the cost of the Railroad. Code, Sec. 9051.

TOMLINSON, Justice, not participating.

ON PETITION TO REHEAR

BURNETT, Justice.

The Railroad Company has filed with us a courteous, dignified petition to rehear these cases. We have read and reread this petition several times. After so doing we are thoroughly convinced that no new issues are raised nor are any new authorities cited why we should change our minds in reference to the original opinion rendered

herein. Unfortunately we do not and cannot agree with the position of the Railroad in any of the assignments made by the petition. We felt in rendering our original opinion, and still so feel, that this opinion is a correct statement of the applicable law in cases of the kind as previously announced by this Court and by the Supreme Court of the United States.

In rendering our original opinion we saw no reason or necessity for again reviewing the various suggested methods used by the assessing authorities in arriving at their conclusion as to the assessed value of the Railroad's properties. We felt that the methods used by both the Board and the Commission were valid and that none of the methods used were illegal and fraudulent or in excess of the jurisdiction of the assessing authorities.

We thought that in view of previous detailed reviews of this Court of successive steps in making their assessments in the cases of *McCord* v. *Southern Railway Company* and *McCord* v. *Nashville, C. & St. L.*, which opinions were cited in our original opinion, that the steps taken in the instant case being so similar in many instances that such a review of these steps was not again necessary. And too, even though some steps taken in the instant cases were different from those cases yet these steps as heretofore said were perfectly legal and there was nothing fraudulent or void therein and it was merely incumbering the opinion herein by setting these steps out in detail. And it is for this reason that we did not do so and we do not now deem it necessary to do so.

We referred to one merely to illustrate how an assessment could be made and was made. We were in error in referring to that assessment in the first paragraph on page 5 of our first opinion [259 S. W. (2d) 156] as "the reassessment", we should have used the words "initial

assessment'' instead of the word ''reassessment''. Our original opinion will thus be corrected by inserting the words ''initial assessment'' in place of the word ''reassessment'' in the first line of the first paragraph on page 5 of our original opinion [259 S. W. (2d) 156].

Since we are unable to find anything new herein which was not so ably brought to our attention in the original brief and the argument before this Court, we must overrule the petition to rehear.

TOMLINSON, Justice, not participating.